UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Peggy J. Smith, et al.,             Case No. 3:12-cv-00662

      Plaintiffs

  v.                                           MEMORANDUM OPINION
                                             AND ORDER

Hartz Mountain Corporation,

      Defendant

## INTRODUCTION

This matter is before me on the motion of Defendant Hartz Mountain Corp. ("Hartz") to dismiss the First Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6). (Doc. No. 19). Plaintiffs Peggy J. Smith, Anthony J. Smith, and B.S., a minor child, ("Plaintiffs") filed a response. (Doc. No. 20). Hartz filed a reply. (Doc. No. 24). For the reasons stated below, Hartz's motion is granted.

## BACKGROUND

Plaintiffs allege they were injured after they purchased and used Hartz UltraGuard Plus Flea and Tick Carpet Powder ("the UltraGuard Powder") in their residence to remedy a flea infestation. (Doc. No. 16 at 6-7). Plaintiffs allege they suffer from "pyrethium toxicity" caused by the active ingredient in the UltraGuard Powder, and that Hartz "was aware that its product was reasonably likely" to cause harm to humans, but failed to provide a proper warning. (Doc. No. 16 at

3, 8). Plaintiffs assert causes of action for (1) statutory product liability, O.R.C. § 2307.73[1]; (2) breach of express warranty; (3) violation of the Ohio Consumer Sales Practices Act, O.R.C. § 1345.02; and (4) loss of consortium. (Doc. No. 16 at 5-9). Hartz filed a motion to dismiss for failure to state a claim, arguing Plaintiffs' claims (1) are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), or (2) consist merely of conclusory allegations of wrongdoing. (Doc. No. 19 at 2-3).

## STANDARD

In deciding a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6), a trial court's function is to test the legal sufficiency of the complaint. The court shall accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the complaint in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Jones v. City of Carlisle, Ky.*, 3 F.3d 945, 947 (6th Cir. 1993). The court need not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Republic Bank & Trust Co v. Bear Sterns & Co., Inc.*, 683 F.3d 239, 246 (6th Cir. 2012).

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## ANALYSIS

FIFRA regulates, *inter alia*, the distribution and sale of pesticides in the United States. In order to register a pesticide, a manufacturer must submit a statement to the Environmental

---

[1] In the First Amended Complaint, Plaintiffs caption Count I as "breach of implied warranty of merchantability" but cite to O.R.C. § 2307.73. In their initial Complaint, Plaintiffs captioned Count I as "statutory product liability." (Doc. No. 2 at 4).

2

Protection Agency ("EPA") that includes the name of the pesticide; a complete copy of the proposed labeling for the product, a statement of all claims to be made for the product, as well as any directions for its use; and the complete formula of the pesticide.[2] 7 U.S.C. § 136a(c)(1). The EPA will register the pesticide if it determines "it will not cause unreasonable adverse effects on humans and the environment . . . and that its label complies with [FIFRA's] prohibition on misbranding." *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 438 (2005). Registration of a pesticide constitutes "prima facie evidence that the pesticide, its labeling and packaging comply with [FIFRA's] registration provisions." 7 U.S.C. § 136(a)(f)(2). "[M]anufacturers have a continuing obligation to adhere to FIFRA's labeling requirements." *Bates,* 544 U.S. at 438 (citing 7 U.S.C. § 136j(a)(1)(E)). Manufacturers also must seek EPA approval before amending the labels on their products. *Id.* at 438-39 (citing 7 U.S.C. § 136a(f)(1)).

FIFRA prohibits states from imposing "any requirements for labeling or packaging in addition to or different from those required" under the Act. 7 U.S.C. § 136v(b); *see also*, *Bates*, 544 U.S. at 444 (state rule preempted if (1) it is a requirement for labeling or packaging, and (2) it imposes a labeling or packaging requirement that is in addition to or different from those required under FIFRA.) FIFRA also preempts "any statutory or common-law rule that would impose a labeling requirement that diverges from those set out in FIFRA and its implementing regulations." *Bates*, 544 U.S. at 452. The EPA mandates that pesticide manufacturers use specific precautionary statements based on the active ingredients in their products. 40 C.F.R. 156.62; 156.70. Manufacturers need not list inert ingredients on the product label unless the EPA determines those ingredients may pose a hazard to persons or the environment. 40 C.F.R. 156.10(g)(7).

---

[2] Plaintiffs' allegation that pesticides "are largely unregulated" because the EPA conducts "little if any independent testing of these products," (Doc. No. 16 at 5), is unavailing. Criticisms of the discretionary conduct of an executive agency raise a political question that is out of place in a personal injury claim for damages against a private company.

A. STATUTORY PRODUCT LIABILITY

Under Ohio Revised Code section 2307.73, a manufacturer is liable for compensatory damages based on a product liability claim only if the claimant establishes (1) the product in question was defective in design, or due to an inadequate warning or nonconformance with the manufacturer's representations; (2) the defective aspect was a proximate cause of harm for which the claimant seeks to recover; and (3) the manufacturer designed or produced the actual product that was the cause of harm. O.R.C. § 2307.73(A)(1)-(3). A product is defective due to an inadequate warning if, at the time it left the manufacturer's control, (1) the manufacturer knew or should have known about a risk that is associated with the product and that allegedly caused the claimant harm, and (2) the manufacturer failed to provide the warning a manufacturer exercising reasonable care would have provided in light of the likelihood of harm and the likely seriousness of the harm. O.R.C. § 2307.76(A)(1)(a)-(b).

Hartz claims Plaintiffs' allegations amount to nothing more than inadequate warning claims, and assert those claims are preempted because they seek to impose a state-law labeling or packaging requirement "in addition to or different from those required" under FIFRA. (Doc. No. 19 at 3, 7). Hartz argues that FIFRA requires manufacturers to produce product labels according to EPA standards and notes that FIFRA mandates even "the location of the warning, . . . the actual words used in the warning, the font size, and the prominence of the warning." (Doc. No. 19 at 5).

Plaintiffs contend Hartz failed to disclose the risks of harm to humans from their products. Plaintiffs claim they do not allege Hartz's labels are insufficient, but that Hartz's advertising and marketing is deceptive because "it fails to disclose risks . . . from use of the products." (Doc. No. 20 at 4). Plaintiffs claim their allegations are protected from FIFRA preemption under *Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*, 617 F.3d 207 (3rd Cir. 2010), because their allegations are not based solely on the contents of the product. (Doc. No. 20 at 6). In *Indian Brand Farms*, the Third Circuit emphasized that the labeling provisions of FIFRA were "clearly not intended to regulate

4

sales literature generally" and concluded that the defendants' sales and marketing materials did not qualify as "labeling" under FIFRA. *Indian Brand Farms*, 617 F.3d at 218.

In truth, Plaintiffs do allege Hartz's labels are insufficient, as they state the UltraGuard Powder "was defective due to inadequate warning or instruction on the product or container." (Doc. No. 16 at 5). This allegation would not mean Plaintiffs' claims are automatically preempted, as FIFRA preempts only those claims that would impose a labeling requirement that is in addition to or different from those required by FIFRA. *See Bates*, 544 U.S. at 452. In this case, however, Plaintiffs claim the FIFRA-prescribed warning is insufficient and seek to require Hartz to use a different warning.

As to advertising and marketing, Plaintiffs offer only that Hartz's products "are advertised and sold throughout the United States, including Ohio," and that Hartz's "advertisement and marketing of its products [was] defective in that [Hartz] failed to disclose the risks of the use of the products." (Doc. No. 16 at 4, 7). Plaintiffs do not allege they relied on Hartz's advertising in purchasing the product, or even that they were aware of advertising for the UltraGuard Powder before they purchased it. While Plaintiffs claim they "relied on . . . statements made on Defendant's website," (Doc. No. 20 at 6), Plaintiffs' First Amended Complaint does not allege Plaintiffs researched the UltraGuard Powder on the internet until *after* Plaintiffs allegedly were injured. (Doc. No. 16 at 3).

In essence, under O.R.C. § 2307.73, Plaintiffs claim Hartz knew or should have known there was a risk Plaintiffs would suffer the illness and side effects alleged, and Hartz failed to provide the warning a reasonable manufacturer would have provided. The fatal deficiency in this claim is that Plaintiffs do not provide any factual allegations that could support a reasonable inference that Plaintiffs relied on any written materials except for the product label. Plaintiffs' sole reference in the First Amended Complaint to advertising materials is conclusory, and conclusions "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see also*, *id.* (legal conclusions must be supported by

5

factual allegations). Thus, the distinction the court drew in *Indian Brand Farms* for advertisements does not apply.

The only written material left is the product label. Plaintiffs seek to hold Hartz liable for labeling the UltraGuard Powder consistently with the EPA's requirements, and FIFRA clearly proscribes any state-law labeling requirement that is in addition to or different from the FIFRA requirements. *Bates*, 544 U.S. at 444. The appropriate standard by which to judge the sufficiency of the product label is contained in the EPA regulations. A claim that state law would require something different from those regulations may not go forward. Plaintiffs' claim for inadequate warning is preempted by FIFRA.

**B. EXPRESS WARRANTY**

Plaintiffs allege Hartz made and breached express warranties with regard to the UltraGuard Powder. FIFRA does not preempt claims for breach of an express warranty, as those claims do not require a manufacturer to label its products in any particular way. *See, e.g., Arlandson v. Hartz Mtn. Corp.*, 792 F. Supp.2d 691, 701 (D. N.J. 2011) (citing *Bates*, 544 U.S. at 444). Plaintiffs must produce well-pleaded factual allegations to support their claims, however, and they fail to do so here.

Under Ohio law, a seller may create an express warranty through (1) any affirmation of fact or promise made by the seller to the buyer which relates to the goods, or (2) any description of the goods, which is made part of the basis of the bargain. O.R.C. § 1302.26(A); *see also*, *Nordberg, Inc. v. Sylvester Material Co.*, 101 Ohio App.3d 89, 96 (1995) (express warranties require "some affirmation or promise on the part of the seller"). Hartz argues Plaintiffs fail to "identify the specific language that they allege constitutes a warranty." (Doc. No. 19 at 19). Plaintiffs contend they have sufficiently alleged Hartz's express warranties. (Doc. No. 20 at 11). In their opposition to Hartz's motion to dismiss, Plaintiffs claim a statement about skin sensitivity constitutes an express

6

warranty.[3] (Id.) The language Plaintiffs quote in their opposition brief, however, is not a promise, affirmation, or description, and it does not appear on the UltraGuard Powder label. (*See* Doc. No. 19-2). Plaintiffs also fail to identify any specific language in the First Amended Complaint. Plaintiffs must offer "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" in order to overcome a motion to dismiss under Rule 12(b)(6), and they fail to do so here. *See Twombly,* 550 U.S. at 555. Hartz's motion to dismiss Plaintiffs' claim for breach of an express warranty is granted.

## C. OHIO CONSUMER FRAUD

Plaintiffs claim Hartz violated the Ohio Consumer Sales Practices Act ("OCSPA"), alleging that, "by selling its products to the general public, [Hartz] implicitly represented that such products were safe and would not cause harm to Plaintiffs." (Doc. No. 16 at 8). Plaintiffs also claim the UltraGuard Powder did not contain a warning "that advised that the product was unsafe or dangerous to humans or ever posed a risk to humans." (Id.) The OCSPA prohibits unfair or deceptive actions or practices in connection with consumer transactions. O.R.C. § 1345.02.

Hartz argues Plaintiffs' consumer fraud claim is no more than a failure-to-warn claim, and thus is preempted by FIFRA because it seeks to impose an additional or different labeling requirement. (Doc. No. 19 at 10). Plaintiffs state the consumer fraud claim is based on advertising and marketing materials. (Doc. No. 20 at 5). Additionally, Plaintiffs argue their consumer fraud claims are properly plead because they are failure-to-disclose claims, rather than affirmative misrepresentation claims. (Doc. No. 20 at 8-9). As I noted above, Plaintiffs do not identify any specific advertising or marketing materials on which they may have relied in making their purchase and, under *Twombly* and *Iqbal*, Plaintiffs must offer more than conclusory allegations. Once again,

---

[3] "Plaintiffs allege that the following statements on Defendant's labels constitute express warranties: Sensitivity, such as slight transitory redness, of the skin at the site of application, may occur after using ANY pesticide product for pets. If signs of sensitivity occur, bathe [your] pet with mild soap, rinse with large amounts of water and consult a veterinarian immediately." (Doc. No. 20 at11).

It is unclear what product label contains this statement, as the UltraGuard Powder is not a direct-application product.

7

the only written material left is the product label. As I concluded above, any claim that asserts Hartz is liable to Plaintiffs for producing a product label in a manner consistent with the EPA's requirements seeks to impose an additional or different labeling requirement, and is preempted by FIFRA. Thus, Hartz's motion to dismiss Plaintiffs' consumer fraud claim is granted.

### D. IMPLIED WARRANTY OF MERCHANTABILITY

It is unclear whether Plaintiffs intend to assert a claim for breach of implied warranty of merchantability. In the First Amended Complaint, Plaintiffs captioned the First Count as "Breach of Implied Warranty of Merchantability," but cited O.R.C. § 2307.73, a section of the Ohio Product Liability Claims Act, rather than O.R.C. § 1302.27, which provides for a warranty of merchantability to be implied into contracts for the sale of goods. (*See* Doc. No. 16 at 5). Plaintiffs do not discuss the presence or absence of a claim for breach of implied warranty of merchantability in their opposition to Hartz's motion to dismiss. (*See* Doc. No. 20). Regardless of whether Plaintiffs intended to assert this claim, the First Amended Complaint, read in the light most favorable to Plaintiffs, does not contain sufficient factual allegations to support such a claim. Ohio law holds that purchasers "may assert a contract claim for breach of implied warranty only against parties with whom they are in privity." *Curl v. Volkswagen of Am., Inc.*, 114 Ohio St.3d 266, 271 (2007). Plaintiffs characterize Hartz as the manufacturer of the UltraGuard Powder, (Doc. No. 16 at 2), and do not assert they purchased the product directly from Hartz. Thus, under Ohio law, Plaintiffs fail to state a claim for breach of implied warranty of merchantability.

### E. LOSS OF CONSORTIUM

Plaintiffs' fourth claim is for loss of consortium. Under Ohio law, "a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury." *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 92 (1992). Because Plaintiffs' other claims have been dismissed, the loss of consortium claim may not go forward.

**CONCLUSION**

For the reasons stated above, Hartz's motion to dismiss pursuant to Rule 12(b)(6) is granted.


So Ordered.



                                                s/ Jeffrey J. Helmick
                                                United States District Judge